**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| RALPH BAKER, | : | Civil No. 09-3710 (JAP) |
| | : | |
| Petitioner, | : | |
| | : | |
| v. | : | **MEMORANDUM OPINION** |
| | : | |
| MICHELLE R. RICCI, et al., | : | |
| | : | |
| Respondents. | : | |
| | : | |

IT APPEARING THAT:

1. On July 22, 2009, Petitioner filed a Petition for Writ of Habeas Corpus, pursuant to 28 U.S.C. § 2254, challenging a judgment of conviction filed on November 10, 2005, in the Superior Court of New Jersey, Middlesex County, Law Division.  On February 17, 2010, Petitioner filed an Amended Petition for Writ of Habeas Corpus.  (Docket Entry #10.)

2. On April 29, 2010, Respondents filed an Answer and the record.  (Docket Entry #18.)

3. On July 13, 2010, Petitioner filed a Reply.  (Docket Entry #27.)

4. Before this Court are three motions filed by Petitioner:  a motion for a preliminary injunction (Docket Entry #26), a motion for sanctions (Docket Entry #22), and a motion for an evidentiary hearing (Docket Entry #19).  Respondents filed papers opposing each motion.  For the reasons set forth below, this Court will deny these motions.

<u>Motion for Preliminary Injunction</u>

5. On July 12, 2010, Petitioner filed a motion (Docket Entry #26) for a preliminary injunction, together with a memorandum of law and exhibits (Docket Entry #26-1).  In the memorandum of law, Petitioner asks this Court to order Respondent Warden to "transfer Plaintiff, Ralph Baker to the Bureau of Prisons and/or Illinois Department of Corrections, under the control of

the Federal Government, until such time as Petitioner's criminal matters are resolved, and/or his criminal sentence completed under the Inter-State Comp[a]ct Agreement." (Docket Entry #26-1 at pp. 5-6.) Plaintiff states that DNA tests performed in Petitioner's criminal proceeding in the Superior Court of New Jersey, Somerset County, implicate Malik Thompson, who he alleges is a leader of the Bloods Street Gang. Petitioner further asserts that his life is in imminent danger because (at an unspecified time and place) he "was approached by [unspecified] members of the Bloods Street Gang, with [the] demand [that] Petitioner cease all mention of DNA in this case, before this Habeas Corpus Court, or he will be killed and his family's home burned down, wit[h] the kil[l]ing of his wife and son." (Id. at p. 4.)

6. Although Petitioner acknowledges that officials placed Petitioner in Protective Custody, Petitioner maintains that he is not safe in Protective Custody:

> Having placed Petitioner, not in the actual Protective Custody, but in area designated Pre-Hearing Protective Custody/Management Control Unit. While the same Blood Street Gang leaders are housed in the same unit, while we all came [from] different units all over the prison. I walked by one Blood member, but he did not know who Petitioner was, but later discovered, and stated I had a chance to kill that [person].

(Docket Entry #26-1 at p. 5.)

7. In his motion, Petitioner asks this Court to order the government to transfer Petitioner to a facility operated by the Bureau of Prisons or the Illinois Department of Corrections until his criminal proceedings are resolved or he is released.

8. On August 4, 2010, Respondent filed a letter brief and attached exhibits in opposition to this motion. (Docket Entry #28.) Attached to the letter brief are several documents pertaining to Petitioner dated May 21, 2010: a Prehearing Protective Custody Placement form (Docket Entry #28 at 39), a Voluntary Protective Custody Consent form (id. at p. 40), a Special Custody Report form

(id. at 41-41), and an Authorization for Temporary Close Custody form (id. at 43).  The forms indicate that, because Petitioner "feels he is in danger while in his current housing location in 6 Right from the Bloods," on May 21, 2010, Petitioner signed a Voluntary Protective Custody Consent form requesting assignment in a protective custody unit at a correctional facility to be designated by the Administrator or the Inter-Institutional Classification Committee.  (Id. at p. 40.) The Special Report states that:  Central Control instructed staff to "offer Protective Custody to Inmate Baker;" "Inmate Baker was offered and accepted PC Status;" and Central Control directed staff to place Petitioner in 1Left on "TCC Non-Congregate Status."  (Id. at 41.)

9.  While Respondent did not file a declaration or affidavit, Respondent's letter brief states that Petitioner is not assigned to the MCU, but to Prehearing Protective Custody in non-congregate status.  (Docket Entry #28 at p. 3.)  Respondent explains in the brief that "[i]nmates on non-congregate status do not [] have any direct contact with other inmates at any time.  They are not permitted to recreate, have meals, or take showers. etc., with other inmates and shall be escorted by two custody staff members any time they are off the housing unit."  Id.  Respondent does not indicate whether any member of the Bloods Gang is also housed on 1-Left (Petitioner's housing unit.)  However, Respondent maintains that prison officials are better suited than this Court to determine security issues.

10.  Respondent argues in the letter brief:  (a) this Court lacks habeas jurisdiction over Petitioner's request for a transfer to a different facility; (b) Petitioner has not shown that he will suffer irreparable harm absent such a transfer; (c) this Court should defer to the prison officials  in regard to Petitioner's conditions of confinement and safety; and (d) Petitioner failed to exhaust available administrative remedies.

11.  Federal law provides two avenues of relief to prisoners:  a petition for writ of habeas corpus and a civil complaint.  See Muhammad v. Close, 540 U.S. 749, 750 (2004).  "Challenges to the validity of any confinement or to particulars affecting its duration are the province of habeas corpus . . . [and] requests for relief turning on circumstances of confinement may be presented in a § 1983 action."  Id.  The United States Court of Appeals for the Third Circuit explained the distinction between the availability of civil rights and habeas relief as follows:

> [W]henever the challenge ultimately attacks the "core of habeas" - the validity of the continued conviction or the fact or length of the sentence - a challenge, however denominated and regardless of the relief sought, must be brought by way of a habeas corpus petition. Conversely, when the challenge is to a condition of confinement such that a finding in plaintiff's favor would not alter his sentence or undo his conviction, an action under § 1983 is appropriate.

Leamer v. Fauver, 288 F.3d 532, 542 (3d Cir. 2002).

12.  In this motion for injunctive relief, Petitioner seeks an order directing prison officials to transfer him to federal custody or to the custody of the State of Illinois on the ground that officials are failing to protect him.  However, because habeas relief is available only when prisoners "seek to invalidate the duration of their confinement - either directly through an injunction compelling speedier release or indirectly through a judicial determination that necessarily implies the unlawfulness of the [government's] custody," Wilkinson v. Dotson, 544 U.S. 74, 81 (2005), and Petitioner's motion does not seek either speedier release or a judicial determination that necessarily implies the unlawfulness of his incarceration, this Court lacks habeas jurisdiction over the motion for injunctive relief.  See McCall v. Ebbert, 2010 WL 2500376 (3d Cir. Jun. 21, 2010) (District Court properly dismissed for lack of jurisdiction § 2241 petition challenging transfer to increased security level and conditions of confinement); Zapata v. United States, 264 Fed. App'x. 242 (3d Cir. 2008) (District Court lacks jurisdiction under § 2241 to entertain inmate's challenge to prison

4

transfer); <u>Ganim v. Federal Bureau of Prisons</u>, 2007 WL 1539942 (3d Cir. May 29, 2007) (same);

<u>Bronson v. Demming</u>, 56 Fed. App'x. 551, 553-54 (3d Cir. 2002) (habeas relief is unavailable to

inmate seeking release from disciplinary segregation to general population, and district court

properly dismissed habeas petition without prejudice to any right to assert claims in properly filed

civil complaint).

13.  This Court will deny the motion[1] for lack of habeas jurisdiction without prejudice to any

right Petitioner may have to assert his request for injunctive relief in a properly filed complaint,

pursuant to 42 U.S.C. § 1983.[2]  <u>Id.</u>

Motion for Sanctions

14.  On June 3, 2010, Petitioner filed a motion asking this Court to impose sanctions against

Respondent for failing to serve a copy of the state court record on Petitioner.  Petitioner maintains

that Respondent's failure violates this Court's Order to answer and Local Civil Rule 81.2(d).  The

---

[1] While Petitioner has not shown that he is in imminent danger, this Court makes no finding regarding the merits of Petitioner's failure to protect claim.  If Petitioner's family members have been threatened, then they should notify the local police.

[2] The filing fee for a habeas petition is $5.00, and inmates filing a habeas petition who are granted <u>in forma pauperis</u> status do not have to pay the filing fee.  <u>See</u> <u>Santana v. United States</u>, 98 F. 3d 752 (3d Cir. 1996) (filing fee payment requirements of Prison Litigation Reform Act do not apply to <u>in forma pauperis</u> habeas corpus petitions and appeals).  In contrast, the filing fee for a § 1983 complaint is $350.00.  Inmates filing a § 1983 complaint who proceed <u>in forma pauperis</u> are required to pay the entire filing fee in monthly installments, which are deducted from the prison account.  <u>See</u> 29 U.S.C. § 1915(b).  In addition, if a prisoner has, on three or more occasions while incarcerated, brought an action or appeal in a federal court that was dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from immune defendants, then the prisoner may not bring another action <u>in forma pauperis</u> unless he or she is in imminent danger of serious physical injury.  <u>See</u> 28 U.S.C. § 1915(g).  Because of these differences, this Court will not <u>sua sponte</u> recharacterize Petitioner's motion as a new civil complaint.  If Petitioner chooses to bring a § 1983 complaint asserting a failure to protect claim, then he may do so by filing a new complaint in a new docket number, and either prepaying the $350.00 filing fee or submitting an affidavit of indigence and six-month prison account statement.

sanction Petitioner seeks is in the form of an inference that the state record is unfavorable to the State's case.  (Docket Entry #22.)

15.  Petitioner does not indicate that he needs any specific item in the record in order to adequately prepare a Reply to the Answer.  Nor does he assert that he does not have his own copy of any particular item in the record.  Significantly, Petitioner does not ask this Court to order Respondent to serve the record or any portion thereof on Petitioner.

16.  On June 10, 2010, Respondent filed a letter opposing the motion for sanctions.  (Docket Entry #23.)  Respondent argues that sanctions are not in order because Respondent did not deliberately violate this Court's Order to answer.  Respondent maintains that the Order to answer in this case did not require Respondent to serve the record upon Petitioner and that Respondent has never previously been directed to serve the record on a petitioner in a § 2254 proceeding.

17.  This Court notes that, since the inception of this case approximately one year ago, Petitioner has submitted to this Court numerous, if not all, items comprising the state court record. Petitioner has not established that sanctions are warranted and this Court will deny  Petitioner's motion for an order imposing a sanction in the form of an inference adverse to the merits of Respondent's legal arguments.

<u>Motion for Evidentiary Hearing</u>

18.  On May 7, 2010, Petitioner filed a motion for an evidentiary hearing and to expand the record.  (Docket Entry #19.)  The motion was supported by a 25-page legal argument and 110 pages of exhibits.  Petitioner primarily argues:  "This Habeas Court is requested to conduct an evidentiary hearing, due to the suggestibility at the Wade Hearing, the only evidence of defendant's guilt in this case . . . .  A[n] evidentiary hearing is respectfully requested in the interest of justice as petitioner

has clearly established a <u>prima facie claim of gross prosecutorial misconduct on the issue of identification.</u>"  (Docket Entry #19 at p. 23.)

19.  The government argues that an evidentiary hearing is not warranted because Petitioner had a hearing regarding identification in the New Jersey courts, the § 2254 Petition is untimely and Petitioner failed to exhaust his legal claims before the New Jersey courts.

20.  Habeas Rule 8, entitled "Evidentiary Hearing," provides:

> **Determining Whether to Hold a Hearing**.  If the petition is not dismissed, the judge must review the answer, any transcripts and records of state-court proceedings, and any materials submitted under Rule 7 to determine whether an evidentiary hearing is warranted.

28 U.S.C. § 2254 Rule 8(a).

21.  Petitioner's motion for an evidentiary hearing will be denied at this time without prejudice as premature and unnecessary, since Habeas Rule 8(a) requires this Court to determine whether an evidentiary hearing is warranted after considering Petitioner's claims for relief and reviewing the answer, the record of the state court proceedings, and Petitioner's Reply.

22.  An appropriate Order accompanies this Memorandum Opinion.

　　　　　　　　　　   /s/ Joel A. Pisano
　　　　　　　　　　**JOEL A. PISANO, U.S.D.J.**

Dated:  August 24, 2010